**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAMERON MCCARY, | : | |
|     Plaintiff, | : | |
| | : | |
|   v. | : | **CIVIL ACTION NO. 24-CV-1922** |
| | : | |
| CODY SIMCOX, *et al.*, | : | |
|     Defendants. | : | |

<u>**MEMORANDUM**</u>

**YOUNGE, J.**                                                            **JULY 7, 2025**

    Plaintiff Cameron McCary, currently incarcerated at Pennsylvania State Correctional Institution ("SCI") Phoenix, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights and related state law claims arising from a traffic stop which led to his arrest on drug charges. ("Compl." (ECF No. 2.)) Upon statutory screening, the Court granted McCary leave to proceed *in forma pauperis*, dismissed some of his claims, and directed service of the remaining claims upon Pennsylvania State Trooper Cody Simcox and a John Doe Defendant alleged to be Simcox's supervisor.[1] (ECF No. 6.) Currently before the Court is a Motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Simcox seeking dismissal of McCary's Complaint.[2] ("Motion" (ECF No. 18.)) McCary has filed two

---

[1] The Court dismissed with prejudice McCary's claims against the Commonwealth of Pennsylvania, the Pennsylvania State Police, and Delaware County, and the official capacity claims asserted against Simcox and Doe. (*See* July 15, 2024 Order, ECF No. 6, at 2-3.) McCary previously sought reconsideration of the Court's decision to dismiss all claims against Delaware County and that motion was denied. (*See* ECF Nos. 7, 9.) His pending Motion to Add Delaware County Back (ECF No. 31) will be denied for the same reasons that reconsideration was denied.

[2] Also pending are McCary's Motion to Appoint Counsel and Motion for Counsel Reconsideration. (ECF Nos. 25, 33.) Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel in a civil case. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). Nonetheless, on August 6, 2024, the Court referred McCary's case to the Prisoner Civil Rights Panel. (ECF No. 10.) McCary's pending Motion to Appoint Counsel requests that the case remain

Responses to the Motion.[3]  ("Response" (ECF Nos. 22, 27.))  For the following reasons, the Motion will be granted in part and denied in part.

## I.    FACTUAL ALLEGATIONS[4]

On August 28, 2019, McCary was arrested following a traffic stop in Philadelphia. (Compl. at 6.)  He alleges that on that date, he was pulled over by Defendant Simcox while driving south on I-95 near the Philadelphia International Airport.  (*Id*. at 9.)  Simcox asked for his name and whether he had ever been arrested, and McCary told Simcox about his only conviction - one for insurance fraud.  (*Id*.)  However, upon running McCary's license, Simcox discovered that there were charges pending against McCary in Delaware.  (*Id*.)  Upon learning of these charges, Simcox asked McCary to step out of the car, whereupon he performed a pat down search but found nothing. (*Id*.)  Simcox asked if McCary would consent to a search of the car and McCary refused.  (*Id*.) Simcox then threatened to call a K-9 unit and McCary responded that he did not mind.  (*Id*.) Simcox proceeded to talk to the two passengers (one male, one female) who were in the car,

---

on the Panel for an additional 90 days.  (ECF No. 25.)  His Motion for Counsel Reconsideration requests that the Court seek appointment of counsel from a source other than the Prisoner Civil Rights Panel.  (ECF No. 33.)  Though McCary's case remained available for review on the Panel for more than six months, no attorney volunteered to accept appointment, and on February 20, 2025, the case was removed from the Panel and McCary was advised that he must represent himself if he seeks to proceed with this case.  (ECF No. 37.)  The pending motions pertaining to appointment of counsel will be denied as moot.

[3] The two Responses are identical, and the Court will cite to the first filed Response at ECF No. 22 only.  McCary's Motion for Extension of Time (ECF No. 26), filed in connection with his second Response to Simcox's Motion, will be denied as moot.

[4] The factual allegations set forth in this Memorandum are taken from McCary's Complaint and Exhibits thereto.  (ECF No. 2).  The Court adopts the pagination supplied by the CM/ECF docketing system.  Where appropriate, grammar, spelling, and punctuation errors in McCary's pleadings will be corrected for clarity.  McCary's Complaint includes 17 handwritten pages supplemented by more than 50 pages of Exhibits.  The Court considers the entire filing to constitute the Complaint.

performed a pat down search of each, and found drugs on the female passenger. (*Id.*) He did not arrest her or place her in custody, but instead proceeded to search McCary's vehicle without his consent. (*Id.*) Simcox located drugs in a tan bag that he found in the female passenger's purse in the trunk of the vehicle. (*Id.*) Simcox took possession of the tan bag containing the drugs, but not the purse. (*Id.*) He then arrested McCary and, over McCary's objections, allowed the two passengers to take his car. (*Id.*) McCary alleges that Simcox allowed them to leave and take the car even though he had found drugs on them during pat down searches. (*Id.*) He further alleges that they were involved in an accident after Simcox allowed them to take the car. (*Id.* at 9-10.)

Following his arrest, McCary was incarcerated for five months, until January 1, 2020, when the charges against him were dismissed for failure to prosecute. In this regard, McCary alleges that on eight occasions, Simcox failed to appear at preliminary hearings. (*Id.* at 11.) After he was released, McCary contacted Simcox's supervisor, Defendant Doe, seeking return of his personal property and to lodge a complaint against Simcox. (*Id.*) Doe told McCary that every time he tried to file a complaint against Simcox, Doe, Simcox and the other named Defendants would rearrest McCary and reopen the charges against him. (*Id.*) Doe also told McCary that he could not file a complaint against Simcox because the law did not permit him to challenge a police officer's actions. (*Id.*) McCary asserts that because of the threat of retaliation and "fraudulent concealment,"[5] he did not file a complaint against Simcox at that time. (*Id.*)

On January 8, 2020, unspecified "Defendants" rearrested McCary and reopened the charges against him. (*Id.* at 11-12.) McCary alleges that he called the judge who had presided over the case at the time the initial charges were previously dismissed, and the reasserted charges

---

[5] The Court understands the "fraudulent concealment" to refer to Doe's incorrect statement of McCary's rights with respect to filing a complaint against Simcox.

were also dismissed. (*Id.* at 12.) Unspecified "Defendants" rearrested him and reopened the charges against him for a third time in August 2023, and, in December 2023, the charges were dismissed with prejudice for failure to prosecute.[6] (*Id.*)

McCary asserts a claim for retaliation in violation of his First Amendment rights and claims for illegal search and seizure, false arrest, and malicious prosecution in violation of his Fourth Amendment rights. (*Id.* at 4-5.) He also asserts state law claims for false imprisonment, civil conspiracy, conversion, malicious prosecution, and intentional infliction of emotional distress.[7] (*Id.* at 5.) He seeks money damages. (*Id.* at 15-16.)

McCary attaches the following to his Complaint: a four-page handwritten document purporting to highlight conflicting statements offered by Simcox in his Affidavit of Probable Cause and during a preliminary hearing on the charges (*id.* at 19-22); a completed Delaware County Police Criminal Complaint prepared by Simcox (*id.* at 24-30); a completed Pennsylvania State Police Incident Report prepared by Simcox (*id.* at 32-36); and a transcript of proceeding in the matter of *Commonwealth v. McCary*, No. CR-4-2020 (C.P. Del.) (*id.* at 38-71).

## II.    STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule

---

[6] McCary refers to a Delaware County criminal docket number in his Complaint, CP-23-CR-3729-2023. (Compl. at 6.) The Court has searched the publicly available docket and has obtained no results matching this docket number, or any docket that appears to reflect the charges giving rise to McCary's claims in this case. While unclear, the docket may have been expunged from public view.

[7] McCary also labels his claims as interference with advantage, recurring act, alternate liability, contributing tortfeasor, legal malice, and intent and malice, (*id.* at 5), none of which appears to have a cognizable legal basis.

12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws

of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III.    DISCUSSION

### A.    Claims Barred by Applicable Statutes of Limitations

McCary asserts a variety of constitutional and state law claim, and Simcox argues that many of these claims are barred by the applicable statutes of limitations.  (Mot. at 29-33.) Specifically, Simcox argues that all of McCary's state law claims, his search and seizure, false arrest, and retaliation claims are time-barred.[8]  (*Id.*)  For the following reasons, certain of McCary's claims will be dismissed as time-barred.

The timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose.  *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).  The Pennsylvania statute of limitations for a personal injury action is two years.  *Id.* at 634 (citing 42 Pa. Cons. Stat. § 5524(2)); *see also Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  Thus, the limitations period applicable to McCary's § 1983 claims is two years.

A claim accrues "when a plaintiff has a complete and present cause of action, that is, when he can file suit and obtain relief."  *Dique*, 603 F.3d at 185 (quotations omitted).  In general, this

---

[8] Simcox also argues that an equal protection claim based on racial profiling is time-barred.  (Mot. at 32.)  In its Order granting McCary leave to proceed *in forma pauperis* and directing service of the Complaint, the Court dismissed a claim asserted pursuant to *Monell v. Dep't. of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) against Delaware County that appeared to arise from alleged discriminatory practices of Delaware County.  (*See* ECF No. 6 at 2 n.4.)  The Complaint does not include an Equal Protection claim separate from the purported *Monell* claim.

means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014). *See also Hickox v. Cnty. of Blair*, 591 F. App'x 107, 110 (3d Cir. 2014) (*per curiam*) ("Hickox's cause of action accrued on November 13, 2010, the date on which he alleges he was injured by the defendants' actions."). "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

McCary's claims arise from conduct engaged in on the date of his original arrest on August 29, 2019, on the date of his first re-arrest in January 2020, on the date of his second re-arrest in August 2023, and on the date of the dismissal of the charges against him in December 2023. McCary was required to bring these claims related to the respective arrests by August 19, 2021, January 2022, August 2025, and December 2025, respectively. *See, e.g.*, *Lloyd v. Ocean Twp. Counsel*, 857 F. App'x 61, 64 (3d Cir. 2021) (*per curiam*) (noting that false arrest and imprisonment claims begin to run at the time the plaintiff was "detained pursuant to legal process"); *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018) (illegal search claims accrue at "the moment of the search"). *Weston v. City of Philadelphia*, No. 17-2432, 2017 WL 3722435, at *3 (E.D. Pa. Aug. 29, 2017) ("[A] claim for malicious prosecution accrues upon the favorable termination of criminal proceedings.") (citations omitted).

McCary's Complaint was entered on the docket on May 3, 2024. However, it was filed on February 7, 2024 at the earliest, because that is the date he signed his initial pleading.[9] *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing."). Since this case was filed more than two years after McCary's claims arising from his initial arrest and his first rearrest accrued, they are time-barred unless, as McCary argues, a reasonable basis for equitable tolling exists. In his Complaint, McCary alleges that he was threatened with re-arrest if he filed any complaint against Simcox based on his conduct during the August 29, 2019 traffic stop and arrest. (Compl. at 11.) McCary reiterates this position in his Response to Simcox's Motion. (*See* Response at 4.) Specifically, McCary states that charges against him were dismissed with prejudice in December 2023 and that the limitations period should be subject to equitable tolling until that date. (*Id.* at 5.)

"Tolling is [an] extraordinary remedy, and is proper only when the principles of equity would make [the] rigid application [of a limitation period] unfair." *D.J.S.-W ex rel. Stewart v. United States*, 962 F.3d 745, 750 (3d Cir. 2020) (alterations in original) (internal citations and quotations omitted). Equitable tolling is generally appropriate where: (1) a defendant actively misleads a plaintiff regarding a cause of action; (2) a plaintiff in some extraordinary way has been prevented from asserting a claim; or (3) a plaintiff has timely asserted his claims but in the wrong

---

[9] In his Response to Simcox's Motion, McCary asserts that he filed his Complaint in February 2024. (Response at 5.) The Court notes that while McCary's Complaint is dated February 7, 2024, (Compl. at 16), the envelope attached to the Complaint is date-stamped April 25, 2024. (*Id.* at 72.) McCary's motion for leave to proceed *in forma pauperis*, mailed in the same envelope, is dated April 8, 2024, indicating that the date written on the Complaint is not concurrent with when McCary gave the pleading to prison officials to mail. Nonetheless, the Court will analyze the timeliness of McCary's claims based on the earliest possible date.

forum. *See id.* McCary does not argue that he was misled regarding the availability of a claim against the Defendants based on Doe's statement that he could not file a complaint against a police officer or that he asserted his claim in an incorrect forum.[10] Rather, he argues that equitable tolling should apply claiming he did not pursue any action against Simcox until after the charges against him were dismissed with prejudice because he was afraid that he would be rearrested. (Resp. at 4–5.) The Court understands McCary to be invoking the "extraordinary circumstances" rule, however, the single threat of rearrest upon which McCary relies is not sufficient to warrant equitable tolling.[11] *See Kach*, 589 F.3d at 635, 645 (equitable tolling until plaintiff's release from home where she had been held virtual captive for more than ten years not warranted despite lack of guardianship of plaintiff and alleged stunted cognitive development); *Frasier-Kane v. City of Phila.*, 517 F. App'x. 104, 107 (3d Cir. 2013) (equitable tolling not warranted where plaintiff was assaulted then regularly threatened by police officer); *Leonard v. City of Pittsburgh*, No. 13-0455, 2013 WL 4541727, at * 9 (W.D. Pa. Aug. 27, 2013) (noting that "our Circuit's 'extraordinary circumstances' rule may well be limited to the facts of the *Lake* [*v. Arnold*, 232 F.3d 360 (3d Cir. 2000)] case, 'where a guardian conspire[d] to deprive a mentally incompetent person of her constitutional and civil rights,' in that case, by a forced sterilization"). *Compare Jane W. v. Thomas*, 354 F. Supp. 3d 630, 635 (E.D. Pa. 2018) (reasonable and persistent fear of violent

---

[10] Even if McCary presented this argument, he would not satisfy the standard to trigger equitable tolling. In the Complaint, McCary pleads that an unidentified superior of Defendant Simcox told him that the law prohibited him from challenging a police officer's actions. Stated otherwise, McCary alleges that an unidentified person made a misrepresentation of law, not of fact. This misrepresentation of law does not trigger equitable tolling for McCary "because he, like everyone, has access to the law." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007). If McCary had exercised due diligence, as required for equitable tolling, he would have discovered that police officers can be sued. *See id.*

[11] To the extent that Pennsylvania law governs the issue whether the statute of limitations is subject to tolling in this case, under Pennsylvania law, duress is not sufficient to toll the statute of limitations. *Kach*, 589 F.3d at 640.

reprisal in light of instability in Liberia supported equitable tolling of limitations period applicable to plaintiff's claims). Accordingly, because there is no basis for tolling the applicable statutes of limitations, the following claims are time-barred and will be dismissed:

### 1.    Search and Seizure Claim

McCary asserts a Fourth Amendment claim against Simcox based on the August 2019 traffic stop and his ensuing arrest. (Compl. at 5.) These claims will be dismissed, because they accrued on the date of the traffic stop and ensuing arrest, when McCary knew or should have known of the basis for his claims. *Baker v. Burkitt*, No. 24-2168. 2024 WL 4535455, at *3 (E.D. Pa. Oct. 21, 2024) (dismissing Fourth Amendment search and seizure claims as time-barred because they were filed more than two years after search and arrest occurred). McCary filed this action on February 7, 2024, nearly five years later and nearly three years after the expiration of the applicable statute of limitations.

### 2.    False Arrest and False Imprisonment Claims

The Court understands McCary to be asserting Fourth Amendment false arrest and state law false imprisonment claims based on each of the three arrests identified in his Complaint. His claims arising from the August 2019 arrest and subsequent imprisonment accrued on the date he was detained. See *Lloyd*, 857 F. App'x at 64. McCary's Complaint was filed more than four years after the false arrest and false imprisonment claims arising from the 2019 arrest accrued. The claims based on the January 2020 rearrest are also time barred. While unclear from the Complaint whether McCary was arrested in January 2020 pursuant to a warrant,[12] he asserts he was released

---

[12] If McCary was arrested pursuant to a warrant, his claim would properly be analyzed as a malicious prosecution claim. *See Wallace v. Kato*, 549 U.S. 384, 390 (2007) (explaining that the tort of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process"); *Noviho v. Lancaster Cnty. of Pa.*, 683 F. App'x 160, 166 (3d Cir. 2017) (per curiam) ("Arrests made pursuant to a 'validly issued—if not validly

from custody when the charges were dismissed, apparently on the same day.  (Compl. at 12.)  Thus, under either scenario, the claims based on the January 2020 arrest are also untimely.

### 3.    Conversion Claim

McCary asserts a state law conversion claim against Simcox, which the Court understands to be based on the loss of his car following his 2019 arrest, when Simcox allegedly permitted McCary's passengers to leave the scene of the arrest with the car, despite McCary's refusal to grant permission for the passenger to drive the car.  (Compl. at 5, 9-10.)  Pennsylvania imposes a two-year statute of limitations on a cause of action for conversion.  *See JTH Tax LLC v. Foster*, 691 F. Supp. 3d 691, 706–07 (W.D. Pa. 2023) (citing 42 Pa. Stat. and Cons. Stat. § 5524(3)).  Under Pennsylvania law, a conversion claim accrues when "there has been a demand for the goods and a refusal to deliver." *Fenton v. Balick*, 821 F. Supp. 2d 755, 761 (E.D. Pa. 2011) (quoting *Serafini v. Mariani*, No. 08-0469, 2010 WL 1342926, at *5 (M.D. Pa. Mar. 31, 2010) (citation omitted)). McCary's conversion claim accrued no later than August 29, 2019, when Simcox is alleged to have allowed McCary's passengers to leave the scene of McCary's arrest with his car over his objections.  It expired two years later, in August 2021.

### 4.    Retaliation Claim

The Court understands McCary to be asserting retaliation claims based on his January 2020 and August 2023 rearrests on the drug charges stemming from the August 2019 traffic stop.  The claim arising from the January 2020 rearrest accrued on that date and the statute of limitations

---

supported—arrest warrant' generally occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment." (quoting *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013)).  That type of claim accrued when the charges were dismissed.

applicable to that claim expired two years later, in January 2022, more than two years before McCary filed his Complaint.  That claim, accordingly, is dismissed as untimely.

**B.    Fourth Amendment False Arrest and Malicious Prosecution Claims - Existence of Probable Cause**

The remaining claims that are not time-barred are related to the second re-arrest in August of 2023 and the dismissal of the charges in December of 2023, of which the underlying alleged criminal conduct originate from the 2019 traffic stop. Simcox's primary argument in support of dismissing McCary's false arrest and malicious prosecution claims is that probable cause existed to arrest McCary following the traffic stop, and that because the absence of probable cause is a required element of the claims McCary is asserting, he has failed to state a claim as a matter of law.  Specifically, Simcox argues that McCary's "constructive possession" of drug paraphernalia established probable cause. (Mot. at 12-18.)  In response, McCary argues that Simcox did not have probable cause to arrest him, because the facts included in the Affidavit of Probable Cause sworn by Simcox – the basis for the initial and two subsequent arrests - do not correctly reflect the facts surrounding the traffic stop and subsequent arrest.  (Resp. at 6.)  He points to allegations in his Complaint that are not reflected in the Affidavit of Probable Cause upon which he bases his argument that probable cause was lacking.

Lack of probable cause is an essential element of a false arrest and a malicious prosecution claim, which both evaluate probable cause under the same standard. *Alburg v. Jones*, No. 20-2419, 2025 WL 1462544, at *7 (E.D. Pa. May 21, 2025) (citing *Mervilus v. Union County*, 73 F.4th 185, 194 (3d Cir. 2023) and *Geness v. Cox*, 902 F.3d 344, 356-57 (3d Cir. 2018)). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is

being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995). As such, whether there are sufficient facts to establish probable cause is dependent on the elements of the crime at issue.  In this case, "[t]o establish the offense of possession of a controlled substance with intent to deliver, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." *Com. v. Kirkland*, 831 A.2d 607, 611 (Pa. Super. 2003). Accordingly, the Court will evaluate whether probable cause existed for this offense.

The parties dispute whether there was sufficient evidence to support the possession element of the offense. In Pennsylvania, "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018). Therefore, if there is no actual possession, as is the case here, "the Commonwealth must establish that the defendant had constructive possession to support the conviction." *Id.* Pennsylvania courts have defined constructive possession as "conscious dominion," which "mean[s] that the defendant has 'the power to control the contraband and the intent to exercise that control.'" *Id.* (quoting *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013)). This form of possession must be established through the totality of circumstances. *See Parrish*, 191 A.3d at 36. "Mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." *Commonwealth v. Valette*, 613 A.2d 548, 551 (Pa. 1992). However, "circumstantial evidence may be used to establish constructive possession of the [contraband]." *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011).

Simcox argues that the totality of circumstances, which he says were articulated in the Affidavit of Probable Cause, support a finding that there was probable cause. He outlines the following facts: "learning of drugs in Plaintiff's vehicle; uncovering large quantities of drugs in

individually wrapped plastic bags inside of Plaintiff's trunk; learning the location of where Plaintiff was coming from (Philadelphia Airport) and where Plaintiff was going (Delaware); and discovering that Plaintiff lied about prior drug charges." (Mot. at 18). Simcox points out that upon learning from the passengers that there was evidence of criminal activity within the vehicle he had probable cause to search the vehicle, and upon finding the drugs, had probable cause to arrest McCary. (*Id*. at 14-15.) McCary counters that the traffic stop was not lawful but was the result of racial profiling. (Resp. at 2; Compl. at 13-14.) He also argues that the Affidavit of Probable Cause does not reflect the following facts: (1) that Simcox's pat down search of his female passenger yielded drugs, (Resp. at 5; Compl. at 9); (2) that the drugs found in the trunk of McCary's car were in the female passenger's purse,; and (3) that Simcox did not retain possession of the purse as evidence. (*Id*.) Finally, McCary points out that his passengers were not arrested, which indicates to McCary that Simcox's decision to arrest him but not his passengers was based on his race. (Resp. at 5.)

The Court agrees with Simcox that there was probable cause to arrest McCary and subsequently initiate criminal charges against McCary. After Simcox pulled McCary's vehicle over for swerving and failing to use a turn signal on I-95,[13] McCary told Simcox that he was

---

[13] McCary argues that the stop and his arrest were racially motivated, and thus illegal. However, under *Whren v. United States*, 517 U.S. 806 (1996), these arguments hold no merit in this analysis. *See id.* at 813 ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *id.* at 806 ("However, this Court's cases foreclose the argument that ulterior motives can invalidate police conduct justified on the basis of probable cause. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.") (internal citations omitted).

traveling from the Philadelphia International Airport to go back to Delaware. Then, when Simcox asked McCary if he was ever arrested, he said that he was only arrested for insurance fraud. Simcox soon discovered that McCary did not disclose that he had drug charges when he ran his name while on the scene. Thereafter, Simcox spoke with a female passenger, who told him that there was drug paraphernalia in the vehicle. According to the Complaint, Simcox conducted a pat down of the female passenger and found drugs on her person. Finally, when Simcox searched the trunk of the vehicle, he found drugs within a tan bag that was within a purse. As Simcox conducted the search in the trunk, McCary kept his eyes on Simcox and made facial expressions that appeared, according to Simcox, as if McCary knew there were drugs. Based on these facts, even when viewed in the light most favorable to McCary, a reasonable officer would have understood that McCary had conscious dominion over the drugs that were in the trunk of his vehicle because of his behavior and omissions. *See, e.g,* Commonwealth. v. Jones, 874 A.2d 108, 122 (Pa .Super. 2005) (finding that constructive possession where the defendant was staring in the area where the drugs were found). While the Court must consider that the drugs were in the female passengers purse in the trunk, it is not dispositive "because more than one person may have constructive possession of an item at the same time." *Commonwealth v. Wright*, 255 A.3d 542, 554 (Pa. Super. 2021). In conclusion, McCary "needed to point to facts suggesting that [Simcox] lacked probable cause to believe he had committed the offense for which he was arrested," which he failed to do, so the claims must be dismissed. *Godfrey v. Pennsylvania*, 525 Fed.Appx. 78, 80 (3d Cir. 2013). Accordingly, McCary's false arrest and malicious prosecution claims related to the August 2023 arrest and the dismissal of the charges in December 2023 are dismissed without prejudice.

## C.    First Amendment Retaliation Claim

McCary asserts a First Amendment retaliation claim against Simcox. (Compl. at 4.) Simcox seeks dismissal of the claim on the grounds that McCary does not allege that he was personally involved in the retaliation, McCary has not alleged the elements of a retaliation claim, and the same decision to recharge and rearrest McCary with drug offenses would have been reached, regardless of McCary's threat to file a complaint against Simcox. (Mot. at 22-26.) Simcox also argues that the retaliation claim is time-barred. (Mot. at 32.) McCary's retaliation claim, to the extent it is based on his January 2020 arrest, is, as noted, time-barred and will be dismissed. *See supra*. However, the retaliation claim based on his August 2023 arrest is not time-barred. Moreover, McCary has alleged plausibly that Simcox personally retaliated against McCary, and has also plausibly alleged each element of a retaliation claim. McCary's retaliation claim based on his August 2023 arrest will proceed to discovery.

The First Amendment "prohibits government officials from subjecting an individual to retaliatory action, including criminal prosecution, for speaking out. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation omitted). This protection includes "a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). In order to state a claim for retaliation, a plaintiff must allege: "that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013). Where the alleged retaliation results in arrest and prosecution, the plaintiff must also show the absence of probable cause for the prosecution. *Walker v. Clearfield Cnty. Dist. Atty.*, 413 F. App'x. 481, 483 (3d Cir. 2011).

In support of his claim, McCary alleges that he engaged in constitutionally protected conduct when, following his release in January 2020, he contacted Simcox's supervisor, Defendant

Doe, seeking to lodge a complaint against Simcox. (Compl. at 11.) Doe told McCary that every time he tried to file a complaint against Simcox, he, Simcox and the other named Defendants would rearrest McCary and reopen the charges against him. (*Id*.) Doe also told McCary that he could not file a complaint against Simcox because the law did not permit him to challenge a police officer's actions. (*Id*.) McCary alleges that less than a week later, on January 8, 2020, the Defendants rearrested McCary and reopened the charges against him. (*Id*. at 11-12.) These charges were dismissed, and some years later, in August 2023, the Defendants rearrested McCary and reopened the charges against him for a third time. In December 2023, the case was dismissed with prejudice for failure to prosecute. (*Id*. at 12.)

Simcox first argues that McCary does not allege that he was personally involved in any retaliation against McCary. This is incorrect. As noted, McCary alleges that the Defendants - including Simcox - rearrested and recharged him in August, 2023. (Compl. at 11-12.) This is sufficient to withstand Simcox's motion. *See McCall v. City of Philadelphia*, 396 F. Supp. 3d 549, 557 (E.D. Pa. 2019) (denying motion to dismiss false arrest and malicious prosecution claims against police officers on ground that plaintiff did not allege personal involvement of each officer where plaintiff alleged that "Defendant officers arrested" and brought criminal charges against plaintiff).

Simcox next argues that McCary does not allege causation, in that he does not allege that his constitutionally protected conduct – complaining about Simcox's conduct – resulted in the August 2023 rearrest. (Mot. at 24-25.) Specifically, Simcox argues that the passage of more than three years between the protected conduct and the August 2023 arrest is fatal to the claim. (*Id*. at 25.) This argument in unavailing because it ignores the "timing plus evidence" test applicable to proof of causation. *See Qin v. Vertex, Inc.*, 100 F.4th 458, 476-77 (3d Cir. 2024) (quoting *Thomas*

*v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (vacating award of summary judgment in employment discrimination case and finding district court's adoption of rigid three-week time frame to determine causation in retaliation claim to be a misapplication of law, because "if temporal proximity alone is not enough, we have recognized that 'timing plus other evidence may be an appropriate test.'").  Moreover, the Third Circuit explains that causation in a retaliation claim under the First Amendment can be established by "evidence gleaned from the record as a whole." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Here, McCary was allegedly rearrested less than two weeks after he made clear to Doe that he wished to pursue a complaint against Simcox.  While his third arrest on the same charges did not occur for more than three years, the fact that it was the third arrest – followed by a third dismissal for failure to prosecute the charges – is sufficient at the pleading stage to support a plausible inference that obtaining a conviction against McCary was not the motivating factor behind the serial arrests.  Moreover, the direct nature of the threat posed by Doe – that McCary will be rearrested and recharged if he pursued a complaint against Simcox – could constitute "other evidence" for purposes of "timing plus evidence" test.  *See also Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (vacating award of summary judgment on retaliation claim against prison official who, before issuing misconduct for possessing contraband broken radio, advised prisoner that he was being written up for giving other officials a "hard time" for breaking and then confiscating the radio during a cell search).  McCary's claim warrants discovery on this issue and the Motion, to the extent it seeks dismissal of McCary's retaliation claim based on lack of causation, will be denied.

Simcox also seeks dismissal of McCary's retaliation claim based on the "same decision defense," reasoning that "because Defendant had probable cause for the search and seizure of

18

Plaintiff's vehicle, and subsequent arrest of Plaintiff," they would have made the same decision to twice rearrest him on the drug charges. (Mot. at 26) (citing *Watson*, 834 F.3d at 422 (further citations omitted). In *Watson*, Third Circuit affirmed in part and reversed in part an award of summary judgment on a prisoner's retaliation claim that was based, in part, on the defendants' argument that evidence supported the issuance of the allegedly retaliatory misconduct, precluding the prisoner's retaliation claim based on the same decision defense. *Watson*, 834 F.3d at 422. The Court determined that one of the defendants had not established that the misconduct would have been issued absent a retaliatory motive, and therefore was not entitled to summary judgment. *Id*. at 425. The same decision defense does not support dismissal of McCary's claim at this early stage, and Simcox's motion to dismiss McCary's retaliation claim will be denied, because Doe told McCary that he would be rearrested and recharged if McCary pursued a complaint, indicating a retaliatory motive. As explained in *Watson*, "even though the charge against him may have been factually supported," as here with the probable cause explained above, "a plaintiff can [still] make out a retaliation claim." *Id.* at 426.

### D.    State Law Claims

#### 1.    Civil Conspiracy

McCary asserts a state law conspiracy claim against Simcox and Doe arising from Doe's statements that all defendants would keep rearresting and recharging him if he pursued a complaint against Simcox. (Compl. at 5.) Simcox seeks dismissal of this claim, arguing that McCary has failed to allege conspiracy with the requisite degree of specificity, and that the claim is time-barred. (Mot. at 25-28, 33). In order to state a civil action for conspiracy in Pennsylvania, a complaint must allege (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act

done in pursuance of the common purpose; and (3) actual legal damage. *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super.1998).  Additionally, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987) (citation omitted).  *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000).  A "plaintiff must assert facts from which a conspiratorial agreement can be inferred" and "[u]nlike factual assertions, mere conclusions are not entitled to the presumption of truth." *Mitchell v. Beard*, 492 F. App'x. 230, 235 (3d Cir. 2012) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Goodson v. Maggi*, 797 F. Supp. 2d 624, 638 (W.D. Pa. 2011) (recognizing that a heightened pleading standard does not apply).  "Further, there must be 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Id.* (quoting *Great W. Mining & Mineral Co.*, 615 F.3d at 178). Upon review, this claim must be dismissed.

McCary alleges that Doe "told [him] that every time [he] tried to file a complaint [against Simcox] he will along with the other defendants will re-arrest [McCary] and re-open the case." (Compl. at 11.)  His Complaint, however, includes no further factual allegations suggesting that Simcox and Doe acted pursuant to an agreement to violate his rights.  As such, his claim is subject to dismissal.  *See Garcia v. Wind Creek Bethlehem, LLC*, No. 22-0292, 2022 WL 4130754, at *17 (E.D. Pa. Sept. 12, 2022) (citing *Chruby v. Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013) (dismissing § 1983 conspiracy claim where complaint included no allegation that involved officers "reached any agreement or meeting of the minds to deprive plaintiff of is constitutional rights").

The claim is subject to dismissal for the additional reason that under Pennsylvania law, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Grose v. Procter & Gamble Paper Prods.*, 866 A.2d 437, 441 (Pa. Super. Ct. 2005); *see also Shingara v. Skiles*, 274 F. App'x. 164 n.2 (3d Cir. 2008) ("[a]s agents of the State Police, the District Court determined that Defendants could not be liable for civil conspiracy because a single entity cannot conspire with itself.")

Accordingly, McCary's civil conspiracy claim will be dismissed.  Because this claim is also time-barred for the same reasons as the other claims based on the 2020 threat of rearrest, the dismissal will be with prejudice.

### 2.    Intentional Infliction of Emotional Distress

McCary asserts a state law claim for intentional infliction of emotional distress against Simcox and Doe.  (Compl. at 5.)  The Court understands this claim to be based on Simcox arresting him three times on the same charges and failing each time to pursue the charges to conclusion, resulting in McCary's imprisonment for a period of approximately four months in 2019 and four months in 2023.  (Compl. at 13.)  For the following reason, this claim is not plausible and will be dismissed.

Under Pennsylvania law, in order to state a claim for intentional infliction of emotional distress a plaintiff must allege that the conduct complained of was extreme and outrageous, the conduct was intentional or reckless, the conduct caused emotional distress, and the distress caused was severe.  *Eck v. Oley Valley Sch. Dist.*, No. 19-1873, 2019 WL 3842399 at *8 (E.D. Pa. Aug. 15, 2019) (dismissing intentional infliction of emotional distress claim against teacher who bullied and humiliated students, used expletives to describe them, and lied about students possessing violent tendencies because conduct was not sufficiently outrageous to support claim).  The

outrageous nature of the conduct at issue is key.  Only conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Id.*, 2019 WL 3842399, at *8 (quoting *Cheney v. Daily News L.P.*, 654 F. App'x. 578, 583 (3d Cir. 2016) (further citations omitted) (providing examples of such outrageous conduct including "mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children").  McCary alleges that the Defendants arrested him three times on drug charges that were ultimately dismissed.  (*See* Compl.)  This conduct is not sufficiently outrageous to support a plausible intentional infliction of emotional distress claim.

McCary's intentional infliction of emotional distress claim is subject to dismissal for the additional reason that he does not allege that he suffered any physical harm. *See Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (citing *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)) (holding that to recover on an intentional infliction of emotional distress claim, the "plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.")  McCary does not describe any injuries, other than the loss of his freedom while imprisoned, suffered as a result of Simcox's conduct.  (*See* Compl.)  For this reason, too, this claim must be dismissed without prejudice.

### 3.    False Imprisonment and Malicious Prosecution

McCary asserts a state law false imprisonment and malicious prosecution claim related to the August 2023 arrest and the dismissal of the charges in December 2023 against Simcox and Doe (Compl. at 5.) Like the Fourth Amendment False Arrest and Malicious Prosecution claims,

these state law claims require a plaintiff to demonstrate that there was *not* probable cause. [14] [15] Because the Complaint does not sufficiently demonstrate that there was not probable cause, as explained above, these claims are dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Simcox's Motion in part and dismiss the following claims with prejudice: Fourth Amendment search and seizure claim; Fourth Amendment false arrest claims arising from the August 2019 and January 2020 arrests; First Amendment retaliation claim arising from the January 2020 arrest; state law claims for false imprisonment arising from the August 2019 and January 2020 arrests; and state law claims for conversion and civil conspiracy. The following claims will be dismissed without prejudice: Fourth Amendment false arrest claim arising from the August 2023 arrest; Fourth Amendment malicious prosecution claim arising from the December 2023 dismissal of the charges; state law claim for false imprisonment arising from the August 2023 arrest; state law claim for malicious prosecution arising the December 2023 dismissal of the charges; and state law claim for intentional infliction of emotional distress. McCary's First Amendment retaliation claim arising from the August 2023 arrest will proceed to discovery. An appropriate Order accompanies this Memorandum.

**BY THE COURT:**

---

[14] "Under Pennsylvania law, '[a] cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff.'" *Lawson v. Pennsylvania SPCA*, 124 F. Supp. 3d 394, 408 (E.D. Pa. 2015) (quoting *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249,* 544 A.2d 940, 941 (Pa.1988).

[15] "The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention. An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not." *Renk v. City of Pittsburgh*, 537 Pa. 68, 76 (1994) (citing *Fagan v. Pittsburgh Terminal Coal Corporation,* 299 Pa. 109, 149 A. 159 (1930)).

_/s/ John Milton Younge_

**JOHN M. YOUNGE, J.**